Kim A. PIERCE, Appellant,

v.

James G. PIERCE, Respondent.

No. 27585.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 16, 2007.

Verna L. Haun, Douglas, Haun & Heidemann, P.C., Bolivar, for appellant.

Richard D. Winders, Kirksey Law Firm, L.L.C., Bolivar, for respondent.

DANIEL E. SCOTT, Judge.

The marriage of Kim ("Wife") and James ("Husband") Pierce was dissolved in 1998.[1] Husband was ordered to pay Wife $500 per month modifiable maintenance, plus $1,192 per month child support for the couple's two children, which was later reduced to $976 for the remaining unemancipated child, Andrew.

After Husband was medically forced to retire, he moved to modify his maintenance and child support obligations in 2005. The court granted his motion, terminated Wife's maintenance, and modified both parties' child support obligations.[2] Wife's appeal includes eleven claims of error. We reverse and remand with directions as to Point VII. Otherwise, we affirm.

---

1. "Ex–Wife" and "Ex–Husband" are more accurate, since the marriage dissolved nine years ago and Mr. Pierce has remarried, but those terms' repetitive use is too unwieldy.

2. By agreement, the court also ordered Husband to pay child support directly to Andrew. Wife's appeal does not challenge this ruling.

■ We review maintenance and child support modification decisions under the same standard, affirming the trial court unless its judgment is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Schleisman v. Schleisman,* 989 S.W.2d 664, 667 (Mo.App.1999); *Gerecke v. Gerecke,* 954 S.W.2d 665, 667 (Mo.App.1997). We review the record and reasonable inferences in favor of the order, disregard contrary inferences, and defer to the trial court even if the evidence could support a different conclusion. *Gerecke,* 954 S.W.2d at 667. Neither Husband nor Wife requested written findings of fact or conclusions of law, thus all fact issues are deemed found in accordance with the judgment. *Haynes v. Almuttar,* 25 S.W.3d 667, 671 (Mo.App.2000); Rule 73.01(c).[3]

### Maintenance

■ Wife's first seven points challenge the court's termination of maintenance. A judgment respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. RSMo. § 452.370.1. While it was Husband's burden to prove changed circumstances, "we presume that the trial court's judgment is valid and the appellant has the burden of demonstrating that the judgment is incorrect." *Lee v. Gornbein,* 124 S.W.3d 52, 56 (Mo.App.2004).

Point I claims Husband "did not demonstrate that he was unable to find a suitable job after retiring and his testimony evinced a clear lack of diligence to secure new employment." Husband, then 51, had to quit his job as a U.S. Treasury Special Agent at the end of 2004 because he no longer met the physical qualifications. His pre-retirement 2004 income was almost $110,000. At time of trial he was a self-employed rancher earning no income from that endeavor. He drew $5,413 monthly from his Treasury retirement and $31 monthly interest income.

Wife contends Husband's retirement was not substantial evidence of a change in conditions, citing *Leslie v. Leslie,* 827 S.W.2d 180 (Mo. banc 1992); *Hughes v. Hughes,* 761 S.W.2d 274 (Mo.App.1988); and *Katz v. Katz,* 759 S.W.2d 857 (Mo.App. 1988). *Leslie* and *Hughes,* involving voluntary retirements, held a voluntary loss of employment does not support modification. *Leslie,* 827 S.W.2d at 183; *Hughes,* 761 S.W.2d at 277. Husband's retirement was anything but voluntary. Due to a prior surgery and continuing use of blood thinners, a medical review disqualified Husband from "activities where significant trauma is likely, such as wrestling, subduing, or restraining a resisting person," which in turn disqualified him from Special Agent duties. Husband's forced retirement, while not *per se* proving changed circumstances, was relevant in deciding if he could pay maintenance and still meet his own financial needs. *See Draper v. Draper,* 982 S.W.2d 289, 292 (Mo.App. 1998).

Wife argues that Husband could find an accounting job, using his education and the skills from his past employment, to supplement his retirement income. Thus, Wife claims the trial court should have imputed income to Husband based upon his ability to earn. *See, e.g., Leslie,* 827 S.W.2d at 183. But Husband is not a CPA; he last worked as an accountant in 1977; his Treasury job did not use or develop accounting skills transferable to private employment; and if he took a different Trea-

---

**3.** Unless otherwise indicated, all rule references are to Missouri Court Rules (2006) and all statutory references to Missouri Revised Statutes (2000).

sury job, his income would be less than his retirement payments.

Unlike Wife, the ex-wives in *Leslie*, *Katz*, and *Hughes* suffered medical problems and limited employability that exacerbated their financial distress.[4] Further, their ex-husbands quit work less than two years after being ordered to pay maintenance, raising legitimate inferences they did so to avoid maintenance. There can be no such inference here. Husband paid Wife maintenance nearly seven years before he was forced into retirement.

With respect to Point II, Section 452.370.1 requires the court to "consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse." Husband testified that he and his new wife shared some expenses listed in his financial exhibits. Wife argues Husband never properly allocated those shared expenses between himself and his new wife.

Husband testified that his new wife paid for all of their food, household and living expenses, payments for two automobiles, and her orthodontic expenses. More importantly, the shared expenses may be part of changed circumstances, but they are not the whole. Husband's income dropped after his forced medical retirement. Wife's financial circumstances improved, since she got more money from Husband's retirement benefit and Husband assumed her child support obligation.[5] The trial court considered these and all aspects of the parties' finances.

Since no findings were requested, all factual issues are found in accordance with the judgment. Rule 73.01(c).

■ Citing *Gornbein*, Point III complains because Husband listed his maintenance obligation in his income and expense statement. We fail to see why this was improper, or that *Gornbein* so holds. *Gornbein* observes that "changed circumstances" connotes a departure from prior known conditions, which means a maintenance award anticipated by the final dissolution is no "changed circumstance" itself. 124 S.W.3d at 60. This does *not* mean parties should omit relevant data from financial exhibits upon which the court relies. To do so invites error or worse. Husband did not claim the original maintenance award was a changed circumstance, and the record does not suggest Husband misled the court by listing maintenance with his other expenses.

We will consider Points IV and V together. Point IV seeks to discount as "voluntary" Husband's average monthly payments of $527 [6]—over and above his child support payments—toward Andrew's rent, food, auto insurance and expenses, and cell phone. Point V claims a failure to prove Wife had not made good faith efforts to achieve financial independence. These points fail because the record supports the trial court's "changed circumstances" finding, especially with our standard of review and all fact issues being found in accordance with the judgment. Husband was forced into retirement. He now makes

---

4. The ex-wife in *Leslie* was being treated for breast cancer, chronic degenerative arthritis, and advanced osteoporosis; her physician urged her not to work full time. 827 S.W.2d at 184. In *Katz* the ex-wife had high blood pressure and lupus which limited her ability to work. 759 S.W.2d at 858. The ex-wife in *Hughes* was unemployed due to degenerative bone disease. 761 S.W.2d at 276.

5. *See* discussions of Points VI and X *infra*.

6. Wife claims the amount is $659 without showing how she reached that figure. We agree with Husband's $527 calculation.

substantially less than before, and his expenses exceed his income. Wife's salary now is higher than in 1998, and she recently added more income as the assistant cheerleading coach. Husband's retirement annuity also pays Wife $667 per month, which after taxes still exceeds her $500 maintenance. Further, Wife no longer owes child support.[7] Husband agreed to assume that obligation for her, reducing her monthly expenses even more. These factors support the trial court's finding of changed circumstances, notwithstanding Wife's contrary arguments.

■ Point VI claims the trial court erred in failing to treat, as marital property, the monthly payments she gets from Husband's forced retirement. Citing *Leslie*, Wife asserts she cannot be forced to consume her apportioned share of marital property to retain an award of maintenance.

*Leslie* is inapposite. The parties confirmed at oral argument that Wife's stream of income will continue unabated for her lifetime. Her entitlement to future payments is neither consumed nor reduced by the monies she receives. Neither party listed Wife's annuity as an "asset" in the financial exhibits for this proceeding, but instead treated it as an income stream. These payments do not consume Wife's apportioned property as *Leslie* proscribes.

■ Point VII claims that the court erred in designating its termination of maintenance non-modifiable. Husband agrees. Section 452.370 provides no basis to designate a judgment modifying maintenance as either modifiable or non-modifi-

able. *Haynes*, 25 S.W.3d at 674. As Husband suggests, we will reverse and remand with directions to correct this error.[8]

Subject to our Point VII ruling and given our standard of review, we cannot say the trial court erred in concluding that Husband's forced retirement and reduced income, Wife's increased income via Husband's retirement benefits, and Husband's assumption of Wife's child support obligations discussed *infra*, constituted changed circumstances substantial and continuing enough to justify terminating the original maintenance award.

### Child Support

Wife's next three points involve child support. Points VIII and IX challenge the child support modification on the same grounds that Points I and II attacked the maintenance modification. Our prior discussion adequately disposes of these claims.

■ Wife's Point X argument asserts that ordering Husband "to pay $965 a month is inconsistent with a finding that [his] presumed child support was $650 per month." The evidence, and the Form 14 attached to and incorporated into the judgment, established the presumed monthly child support at $965, with Husband owing $650 and Wife $315. Husband volunteered to pay the whole $965—thereby assuming Wife's support obligation and relieving her thereof—and the court entered judgment accordingly. Point X merits no further discussion.

---

7. *See* Point X discussion *infra*.

8. A similar error was deemed harmless in *Gerecke*, the court noting that when maintenance is terminated and "there remains no future maintenance obligation under the existing decree, then the obligation to pay main-

tenance may not be revived." 954 S.W.2d at 670–71, *quoting Ethridge v. Ethridge*, 604 S.W.2d 789, 791 (Mo.App.1980). But *Gerecke* may be factually distinguishable, so we will err on the side of caution and remand.

### Attorney Fees

 Wife's final point challenges the trial court's failure to award her attorney fees. Although Section 452.355 authorizes an attorney fee award "after considering all relevant factors including the financial resources of both parties," it does not *compel* such an award. *In re Marriage of Thompson*, 24 S.W.3d 751, 756 (Mo.App. 2000).

> "To require one party to pay the attorneys' fees of the other necessitates a showing of unusual circumstances justifying deviation from the normal rule that each party should bear his own litigation costs." Only on a showing that the trial court abused its broad discretion in ordering, or refusing to order, one party to a dissolution to pay the attorney fees of the other party, will an appellate court overturn the trial court order. To show an abuse of discretion by the trial court in its attorney fee award, the complaining party has the burden to show that the order is " 'clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of deliberation.' "

*Id.* (internal citations omitted). Wife cites the parties' differing financial situations, but our review of the evidence indicates Husband's wealth does not greatly exceed Wife's. Considering the trial court's broad discretion in such matters, denying Wife's attorney fee request is not so unreasonable and arbitrary as to shock one's sense of justice or suggest a lack of deliberation.

### Conclusion

We reverse as to Point VII, and remand for the trial court to re-enter judgment without designating its termination of maintenance as "non-modifiable." We affirm the judgment in all other respects.

PARRISH, J., and RAHMEYER, P.J., concur.