**In re the Marriage of Katherine J. NELSON, Petitioner/Respondent/Cross–Appellant,**

v.

**Donald R. NELSON, Respondent/Appellant/Cross–Respondent.**

**Nos. ED 75657, ED 75887.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 21, 2000.

Lawrence Gillespie, Bruce F. Hilton, Kirkwood, for appellant.

Richard J. Eisen, Michelle J. Spirn, St. Louis, for respondent.

WILLIAM H. CRANDALL, Jr., Presiding Judge.

Husband, Donald R. Nelson, appeals from the judgment of the trial court modifying the decree of dissolution of his marriage to wife, Katherine J. Nelson. Wife cross-appeals. We affirm in part and reverse and remand in part.

The marriage of the parties was dissolved by a decree of dissolution on March 21, 1995. One child was born of the marriage in 1982 and the court awarded wife physical and legal custody of that child. The court ordered husband to pay $1,100.00 per month in child support and $2,000.00 per month in spousal maintenance, and awarded wife one-half of husband's company pension and stock ownership plans.

In March 1998, husband filed a motion to modify, seeking a termination or reduction in spousal maintenance and a reduction in child support. Wife filed a motion to dismiss, alleging that husband's failure to pay maintenance warranted an involuntary dismissal of his motion to modify. Wife also filed a motion to hold husband in contempt for failing to pay spousal maintenance.

The evidence adduced at the hearing on the motions established that at the time of the dissolution in 1995, husband was employed and earning about $135,000.00 annually. His yearly earnings were in excess of $193,000.00 for 1997 and were more than $50,000.00 for the months he worked in 1998. Husband voluntarily retired in March 1998 at 55 years of age. From February 1998 on, he failed to make maintenance payments in accordance with the decree and at the time of the hearing was $16,000.00 in arrears. He had taken his portion of his company pension in a lump sum payment and purchased an annuity which paid him $3,047.00 per month. In addition, he owned $180,000.00 worth of company stock. He was remarried and his wife's annual income was about $69,000.00. He was employed part-time as a teacher at a university and earned about $8,000.00 per year.

Wife was 55 years of age. She had been working since October 1995 in retail sales. At the time of the hearing, she worked about 20 to 25 hours per week and earned $8.00 per hour. She also attended college part-time, with the goal of becoming a nurse. When husband retired, wife received her portion of his pension plan in a lump sum which she invested in an individual retirement account (IRA). She also had $160,000.00 worth of company stock that had been awarded to her in the dissolution decree. She testified that her monthly expenses were $4,111.51.

The trial court found there was a substantial and continuing change in circumstances with respect to husband's maintenance obligation and modified the amount of maintenance awarded to wife, reducing it from $2,000.00 to $1,500.00 per month. The court found no change of circumstances with respect to husband's child support obligation and denied husband's request to decrease child support. The court granted wife's motion for contempt in part and denied it in part, ordering husband to pay $16,000.00 to wife for maintenance due for the period of March 1998 through October 1998. The trial court also ordered husband to pay $2,000.00 of wife's attorney's fees.

## WIFE'S MOTION TO DISMISS

Initially, we address wife's first point on appeal challenging the trial court's denial

of her motion to dismiss [1] in which she alleged that husband's failure to pay maintenance in accordance with the original decree barred his motion to modify. Wife relies on *Staples v. Staples*, 895 S.W.2d 265 (Mo.App. E.D.1995) in which this court affirmed the trial court's involuntary dismissal of husband's motion to modify his maintenance obligation because he failed to pay maintenance in compliance with the very order he was seeking to modify. Wife argues that like the husband in *Staples*, husband was attempting to "simultaneously flout and invoke the authority of the court." *See Staples*, 895 S.W.2d at 267.

■ Our review of the trial court's denial of a motion to dismiss under Rule 67.03 is limited to an abuse of discretion standard. *See State ex rel. K–Mart Corp. v. Holliger*, 986 S.W.2d 165, 169 (Mo. banc 1999) (denial of a motion to dismiss on the grounds of *forum non conveniens* is discretionary with the trial court); *Staples*, 895 S.W.2d at 266 (involuntary dismissal for petitioner's failure to comply with a prior court order with regard to maintenance is reviewed under an abuse of discretion standard). Judicial discretion is abused when the order of the trial court is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said the court abused its discretion. *Staples*, 895 S.W.2d at 266.

■ Here, the trial court did not abuse its discretion in denying wife's motion to dismiss. Husband stopped paying maintenance when he filed his petition for modification based on the fact he had retired and his income was greatly reduced. In contrast, the husband in *Staples* had not incurred any reduction in income. *See id.* at 267. In addition, husband's position was that wife's receipt of her portion of his pension plan fulfilled his maintenance obligation to her; and in keeping with that position, he did not pay maintenance for total of eight months before the hearing. In comparison, in *Staples*, the husband's position was that there was a change in circumstances as to wife's ability to provide for herself, *id.* at 266; and he made no maintenance payments from 1991 through November 1993 and only three in 1990, despite having a gross income in excess of $200,000.00 in 1990 and 1991. *Id.* at 267. Wife's first point is denied.[2]

### STANDARD OF REVIEW

Review of the remaining issues on appeal is governed by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence. *L.J.B. v. L.W.B.*, 921 S.W.2d 23, 24 (Mo. App. E.D.1996). We recognize the superior position of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles that are not revealed in a trial transcript. *Id.*

### SPOUSAL MAINTENANCE

In the first point of his appeal, husband contends the trial court erred in refusing to terminate his $2,000.00 per month maintenance obligation or, in the alternative, to reduce it to less than the $1,500.00 per month ordered in the modification. He argues that "[t]he additional income which would be available to Wife as a result of full-time employment at her pres-

---

1. Although the record on appeal is unclear as to whether the trial court actually ruled on wife's motion to dismiss, the court's proceeding with the case and hearing evidence implies that it denied wife's motion to dismiss.

2. Our holding on this point does not imply that husband was justified in unilaterally withholding maintenance payments to wife, but only that the trial court acted within its discretion in proceeding with this case.

ent position, in combination with the income available to her from the retirement distribution, comprises what Husband had previously paid to Wife as maintenance under the [decree]."

In the second point of her appeal, wife challenges the trial court's reducing husband's maintenance obligation from $2,000.00 to $1,500.00 per month. She contends the trial court failed to make the requisite determination that changed circumstances made the original award unreasonable. She also contends the court's failure to find changed circumstances with respect to husband's child support obligation precludes it from finding changed circumstances with respect to his maintenance obligation.

Section 452.370.1, RSMo (Cum.Supp. 1998) sets forth the standard for determining when the court may modify the provisions of a decree regarding maintenance and provides in relevant part:

> [T]he provisions of any judgment respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. In a proceeding for modification of any child support or maintenance judgment, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties. . . .

Here, the trial court found that there had been a substantial and continuing change in circumstances justifying a reduction in maintenance, but did not specify what constituted the changed circumstances. In addition, the trial court did not make an express determination of whether the changed circumstances rendered the original award of maintenance unreasonable.

Changed circumstances sufficient to support modification must be proven by detailed evidence and must also show that the prior decree is unreasonable. *Bradley*

*v. Bradley,* 880 S.W.2d 376, 379 (Mo.App. W.D.1994). Neither a decrease in the earnings of the spouse seeking modification nor an increase in the income of the spouse receiving maintenance alone requires modification. *Id.* The spouse seeking modification has the burden to establish that the terms of the original decree have become unreasonable. *Id.*

A trial court may impute income in considering a party's maintenance obligation. *Id.* Where retirement is voluntary and part of an employer's incentive retirement plan, the consequential reduction in pay does not necessarily entitle a party to a reduction in the party's maintenance obligation. *Id.* (citing *Hughes v. Hughes,* 761 S.W.2d 274, 276–277 (Mo.App.1988)). A party's past, present, and future earning capacity can be considered as competent evidence of a party's ability to pay maintenance. *Hughes,* 761 S.W.2d at 276.

At the time of the dissolution in March 1995, husband earned about $135,000.00 annually. His yearly earnings were in excess of $193,000.00 for 1997 and more than $50,000.00 for the months he worked in 1998. He voluntarily retired in March 1998 at the age of 55 years. He testified that he was "just tired of working" and "decided it was time" to retire. Under his pension plan, his monthly income decreased to $3,047.00. He also was employed part-time, earning about $8,000.00 per year. Husband's decision to take early retirement is considered a voluntary reduction in income and cannot support a reduction in maintenance. *See Leslie v. Leslie,* 827 S.W.2d 180 (Mo. banc 1992) (early retirement is not evidence of substantial and continuing change of circumstances requiring modification of maintenance); *Bradley,* 880 S.W.2d at 376 (husband's voluntary retirement and attendant reduction in income by 50 percent did not warrant modification of maintenance because there was evidence husband could supplement his retirement income with other employment).

In addition, considering wife's need for maintenance, the record shows that she had been working since October 1995 at a retail clothing store and had increased her hours since the time of the dissolution. She earned about $950.00 per month. She attended college part-time, with the goal of becoming a nurse. No evidence was presented at trial to show that wife was either underemployed or had the prospect of significant advancement with her current job. In light of the fact that wife was attending nursing school, she was working about as many hours as she was capable of working. Wife also demonstrated an increase in her expenses since the original award of maintenance as well as her inability to meet her monthly financial obligations on her income alone.

■■■■ Husband contends that the income from the lump sum wife received as her portion of his pension plan should have been considered as an income-producing asset for purposes of determining wife's income and should reduce his maintenance obligation. *See, e.g., Nelson v. Nelson,* 937 S.W.2d 753 (Mo.App. S.D.1997); *Hogan v. Hogan,* 796 S.W.2d 400 (Mo.App. E.D. 1990). We disagree. Both the *Nelson* and *Hogan* decisions involved the division of a pension plan at the time of dissolution. In *Leslie,* 827 S.W.2d at 182–183, the supreme court distinguished between the valuation and division of a pension plan in an original dissolution proceeding and a subsequent modification based on a spouse's reception of benefits under that pension plan as follows:

The reduction in maintenance [in a modification proceeding], dollar for dollar in the amount of the pension benefit, had the effect of impermissibly amending that division of marital property.

... While it is correct that, upon valuation and division of a pension plan, the trial court may take the sum of the pension into account in reducing an amount of maintenance awarded in an original dissolution proceeding, the law is well settled that a spouse is not re-

quired to consume his or her apportioned share of marital property in order to be entitled to an award of maintenance.

(Citations omitted). As to wife's decision to place the funds from husband's pension plan in an IRA instead of taking a monthly payment, we recognize wife's ability to make financial and business decisions with regard to the property awarded to her in the decree of dissolution.

Here, there was evidence of changed circumstances to justify the modification of husband's maintenance obligation, but not a termination of that obligation. The trial court did not err in reducing husband's maintenance obligation to $1,500.00 per month. This figure reflects both an imputation of income to husband because of his voluntary early retirement as well as a consideration of wife's increased earnings from employment since the dissolution. Husband's first point is denied.

■■■■ Wife charges error in the trial court's modification of the maintenance award because it failed to make the specific finding that changed circumstances rendered the original award of maintenance unreasonable. Failure to make express findings in the language of section 452.370 does not make the modification of maintenance erroneous, as long as there is evidence to support a finding of a substantial and continuing change in the circumstances of the parties. *See LoPiccolo v. LoPiccolo,* 581 S.W.2d 421, 424 (Mo.App. 1979). As discussed above, there was evidence to support a finding of a substantial and continuing change in circumstances.

■■■■ Wife also challenges the award of maintenance on the basis of the incongruity between the trial court's finding a change in circumstances to support a reduction in maintenance and its failure to find a change of circumstances to support a reduction in child support. We agree. The principles relative to reduction and imputation of a spouse's income in child support cases are equally applicable in

modification of maintenance cases. *Ramsey v. Ramsey*, 965 S.W.2d 365, 367 (Mo. App. E.D.1998). We find, however, that the inconsistency does not render the modification of the maintenance award erroneous, but only impacts on the propriety of the child support award, which we address next in this opinion. Wife's second point is denied.

### CHILD SUPPORT

In his second point, husband contends the trial court erred in failing to modify his child support obligation for the reason that the trial court's determination that there was no substantial and continuing change in circumstances with respect to his child support obligation was not supported by the evidence. He further argues that the amount of child support calculated in accordance with Form 14 resulted in a 20 percent deviation from the existing amount of child support and thus there was a prima facie showing of a substantial and continuing change in circumstances pursuant to section 452.370.1.

The party seeking modification bears the burden of showing a change in circumstances so substantial and continuing that the current terms of the child support award are unreasonable. Section 452.370.1. Regarding the modification of child support, section 452.370.1 provides in relevant part:

If the application of the child support guidelines and criteria set forth in section 452.340 and applicable supreme court rules to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more, a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable, if the existing amount was based upon the presumed amount pursuant to the child support guidelines.

Rule 88.01(e) states that there is a rebuttable presumption that the Form 14 amount is the proper amount of child support, but the presumption may be rebutted if the court finds in a written finding or a specific finding on the record that the Form 14 amount is unjust or inappropriate. The use of Form 14 in calculating child support in a modification proceeding is mandatory. *Mann v. Hall*, 962 S.W.2d 417, 420 (Mo. App. W.D.1998) (citing *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo.App. W.D. 1996)).

> [U]nder Rule 88.01 the trial court in all cases involving the award of child support is required to determine and find for the record the presumed correct child support amount calculated pursuant to [Form 14]. The determination and finding of the amount can be done by either accepting for the record a Form 14 amount calculated by a party, or in the event it "rejects" the Form 14 amounts of the parties as being incorrect, doing its own Form 14 calculation.

*Woolridge*, 915 S.W.2d at 381–382.

Here, the original decree of dissolution ordered husband to pay child support in the amount of $1,100.00. Husband submitted four Form 14's, using different figures to compute various presumed child support amounts ranging from $173.00 to $515.00. All of husband's Form 14's showed a deviation of more than 20 percent between the existing child support obligation and the presumed child support amount. Wife submitted one Form 14 and calculated the presumed child support amount to be $1,329.00. The trial court denied husband's motion to modify child support, apparently rejecting both husband's and wife's Form 14's. The court, however, did not perform its own Form 14 calculation and did not use the $1,500.00 awarded to wife in the modification as the amount of maintenance. Because the court failed to follow the procedure required by *Woolridge*, it cannot be determined whether there was a change in the amount of child support of 20 percent or

more from the prior decree,[3] and thus it cannot be demonstrated that there was a prima facie showing of a change in circumstances supporting modification of child support under section 452.370.1. *See Mann,* 962 S.W.2d at 420–421. Further, the court made neither a written finding nor a specific finding on the record that the Form 14 amount was unjust or inappropriate. The trial court's failure either to use wife's or husband's Form 14 computations or to indicate how it calculated the child support obligation is reversible error. Husband's second point is granted.

The judgment of the trial court is affirmed in part and reversed in part and the cause is remanded for further proceedings not inconsistent with this opinion.

MARY K. HOFF, J., and ROBERT E. CRIST, Sr.J., Concur.

3. Wife contends that husband cannot rely on "the 20% threshold provided in Section 452.370.1 as a basis for demonstrating a change in circumstances so substantial and continuing as to render an award of child support unreasonable ... [because] the record reveals that the amount of $1,100.00 per month was not determined in accordance with the child support guidelines...." The record before us does not support wife's contention. The decree of dissolution did not indicate whether or not the amount of child support was determined in accordance with the guidelines and no completed Form 14 worksheet was attached to the decree.